LAW OFFICES OF D. SCOTT DATTAN
2600 Denali Street, Suite 460
Anchorage, Alaska 99503
Phone: (907) 276-8008

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) |
| | ) |
| CARLOS RAINEY, et al | ) |
| | ) |
| Defendant. | ) |
| _____ | ) Case No. 3:05-cr-108-02-JWS |

**SUPPLEMENTAL
TRIAL BRIEF
for
DEFENDANT SHANNON RAINEY**

Shannon Rainey, by and through her attorney D. Scott Dattan, submits supplemental this trial brief to provide the court and the government with notice of her intention to assert the defense of duress or coercion at trial both to refute elements of the offenses charged and as an affirmative defense.

Ms. Rainey is charged in the indictment with conspiracy to distribute cocaine (Count 1) and with money laundering (Counts 13, 14, 15, 16, 17, 18, 19 and 21). However, she did not and could not voluntarily make an agreement because she acted under duress at the time of the offense charged.

Criminal pattern jury instruction 6.5 states that "The defendant does not act [willfully] [intentionally] [voluntarily] if the defendant acts under [duress] [coercion] [compulsion] at the time of the offense charged. If the government fails to prove the absence of duress beyond a

reasonable doubt, then you must find the defendant not guilty…." Ms. Rainey therefore denies that the elements of conspiracy can be proven because, as stated in criminal pattern jury instruction 8.16 "one becomes a member of a conspiracy by willfully participating in the unlawful plan…."

To assist the jury, Professor Sharon K. Araji, Ph.D., has been retained to testify regarding the patterns and dynamics of domestic violence, including but not limited to such things as minimization, denial, self-blaming, history of domestic violence in families, occurrences across socioeconomic classes, races, ethnic groups, etc., why victims stay and/or return after leaving, risk factors, concepts of learned helplessness, cycle of violence, power and control, impact on children and how children are used for control, characteristics of the abuser, abused, children, social groups, escalation of abuse such as reference to the Conflict Tactic Scale, fear of retribution, fear of ending the relationship and what would happen to victim and children, and different forms of abuse that may include verbal, emotional and physical abuse. Professor Araji has not interviewed Ms. Rainey. Professor Araji has testified frequently on these issues on behalf of the District Attorney in prosecutions for domestic violence assault. Her curriculum vita has been sent to the U.S. Attorney's office.

Ms. Rainey admits she is married to Carlos Rainey. She admits the conduct alleged in overt act number five in the indictment; she took the parcels containing cocaine to UPS on July 15, 2005 and used a false name. She admits the conduct alleged in overt act number twelve; she shipped parcels containing cocaine via FedEx on October 12, 2005.

Although she does not independently remember the exact dates she received funds, nor the precise amounts, for purposes of trial she admits receiving the amounts, for purposes of trial she admits receiving the amounts alleged in the money laundering counts on the dates indicated.

What she does not admit is that she willfully or voluntarily joined any conspiracy, much less one to distribute drugs. Likewise, she does not admit that she knew the funds she received from her husband, or from his uncle, Alexander Booker, represented proceeds of drug dealing, nor that when she received the money that it was her intent to promote that illegal activity, or that she was trying to conceal the source of the proceeds.

Ms. Rainey did what she did under duress or compulsion from her husband. She is well aware that:

> A defendant must establish three elements in order to present this defense: (1) an immediate threat of death or serious bodily injury, (2) a well-grounded fear that the threat will be carried out, and (3) lack of a reasonable opportunity to escape the threatened harm:

United States v Moreno, 102 F.3d 994,997 (9th Cir. 1996). But she also relies on the fact that each offense with which she is charged requires proof that she acted willfully, intentionally or voluntarily. That element of each offense cannot be proved in light of the prolonged violence to which she was subjected by Carlos Rainey. Thus she relies on the duress defense to refute the elements of the crime charged and as an affirmative defense.

The government has gone to great lengths to portray Carlos Rainey, the leader of the "Rainey drug trafficking organization," as a violent and dangerous man. For instance, in an application for search warrant, Special Agent Gregory Shadko of the DEA on November 17, 2005, stated "The Rainey Organization has earned a reputation for violence and for using firearms to enforce their drug trade." In that affidavit, he refers to Carlos Rainey as "C-Murder".

Interestingly, much of that violence was directed at women. On September 5, 1995, Shannon Rainey was admitted to the hospital for treatment of a broken rib and punctured lung –

injuries inflicted by Carlos Rainey when "he stomped on me with his foot …. Then turned on the burner on the stove and was going to burn my face. He dragged me to the stove…"

On August 9, 1997, Carlos Rainey inflicted brutal injuries on Tiffany Russell, the mother of his son. Mr. Rainey choked her, punched her in the face and kicked her. When she regained consciousness, she was lying in a pool of blood, her front teeth had been knocked out and her jaw fractured. Mr. Rainey was convicted of Second Degree Assault, (Domestic Violence) with a sentence of 18 months. Further, he was prohibited from having any contact with Ms. Russell for twenty years.

Shannon was well aware of the beating he administered to the "other woman". And, she continued to be the victim of domestic violence at his hands. Basically she was completely dependent. In order to provide this court with a complete picture, Nancy Kaser-Boyd, Ph.D. has been retained as an expert witness. She has performed a forensic psychological evaluation of Shannon. Her curriculum vitae and report will be submitted as exhibits, along with certified copies of the criminal records pertaining to Carlos Rainey's assault conviction and of Shannon's medical records for the injuries she received.

Dr. Kaser-Boyd's conclusion is that Shannon suffered from Battered Woman Syndrome. In addition, both Carlos Rainey and his mother, Theresa Rainey are or will be subpoenaed to testify at this trial. Mr. Rainey may or may not admit to battering, controlling and manipulating Shannon. Theresa Rainey will testify to her son's drinking, destruction of property and her efforts to control him. Shannon plans to testify in order to admit that she did send packages and receive money. However, she sent the packages because she felt she had no choice. From her perspective, the money was sent to her when she asked Carlos for money to pay bills. She thought

he was working for his uncle, Alexander Booker, in Anchorage, as a mover. She did not know the funds were from drug dealing, if they were.

She thus is truthfully admitting the conduct with which she is charged. However, she acted as a result of the violence and threats from Carlos Rainey, not as suggested by the government's expert, Dr. Mills, that she had criminal intent. Dr. Mills does concede that "Her husband's long history of significant abuse may have, subjectively, diminished her sense of options, both for leaving the marriage and for her conduct within it….", but he tempers that observation of the facts with a conclusion that she acted under no compulsion. Dr. Mills apparently does not understand domestic violence and the impact of it on women. This is the ultimate issue to be decided in this case: Was Shannon a battered woman? Relevant cases dealing with this issue are: United States v Winters, 729 F.2d 602 (9th Cir. 1984) and United States v Johnson, 956 F.2d 894 (9th Cir. 1992).

In Winters, supra, the government recognized that severe psychological distress could deprive women of "ego-strength, self-confidence and willpower when they were in the threatening shadow of Winter's complete domination over them." An expert witness was called by the government "To assist the jury in understanding the women's conduct and to dispel any notion that they voluntarily submitted …." That is essentially the purpose for which Dr. Kaser-Boyd will be called.

In United States v Johnson, supra., at 899 the court stated:

> Battered woman syndrome is a set of psychological and behavioral reactions exhibited by victims of severe, long-term, domestic physical and emotional abuse. L. Walker, The Battered Woman Syndrome (1984). Battered woman syndrome is not a mental disease or defect; rather battered woman syndrome is a post-traumatic stress disorder. Its psychological effects are often similar to the effects of imprisonment on kidnap victims and prisoners of war. Once battered women believe themselves to be helpless victims of abusive men, they behave like hostages

> and link themselves to their captors out of fear that it is the only way to survive. Battered women are unable to respond effectively to violence because they are psychologically trapped in the violent relationship.
>
> Repeated beatings diminish the battered woman's motivation to respond and instill in her a negative belief about the effectiveness of her actions. This "learned helplessness" keeps the battered woman from leaving her batterer. One of the primary survival skills of battered women is hyper alertness. The battered woman learns to be sensitive to her environment to prevent further violence to herself. The development of survival skills, however, comes "at the expense of escape skills." L. Walker at 33 and 87-89 ….

Through her own testimony and the testimony of Dr. Kaser-Boyd the defense intends to show that Shannon's actions were manifestations of her survival skills – that she did what Carlos Rainey told her to do in order to avoid further violence to herself and to her children. The <u>Johnson</u> court went on to discuss the duress defense in this context at 900:

> The defense has a particular relation to the defense of duress as it has been expanded by the commentary to the Model Penal Code, The Model Penal Code itself… uses a person of ordinary firmness as the measure of duress but its commentary expands the defense to encompass a case where "by the continued use of unlawful force, persons effectively breakdown the personality of the actor, rendering him [or her] submissive to whatever suggestions they make. They then, using neither force nor **threat of force** on that occasion suggest that he [or she] perform a criminal act; and the actor does what they suggest. Id. §209, comment 3. A leading authority on the common law has added that the defense applies when the defendant is so far "in thrall to some power" that a legal sanction would be ineffective in controlling any choice that may be made. Glanville Williams, <u>The General Part</u>, 755-62 (2nd ed. 1961). The commentary to the Model Penal Code repeats Williams' language without disapproval. Model Penal Code §209 n.40. This substantial expansion of the defense may go too far if not linked to gross and identifiable classes of circumstances. Battered women are in circumstances forming such a class.

> Our own law recognizes that for a substantial period of time a brutal man may subject women to severe psychological stress such that they "failed to escape or cry out for help when in a public place because they lacked sufficient ego-strength, self-confidence and will power when they were in threatening shadow of [the man's] complete domination over them." United States v Winters, 729 F.2d 602, 605 (9th Cir. 1984). …In other contexts, too, we have recognized the "pattern, all too familiar, of a victim identifying with the aggressor under conditions of terror." Lozo-Majano v INS, 813 F.2d 1432, 1434 (9th Cir. 1987). Accordingly, what is required is for the fact-finder to determine whether, given the experience and psychological make-up of this defendant, she feared to leave her criminal ways and obeyed from fear the criminal who directed her conduct.

Carlos Rainey is a criminal. He has changed his plea. He has been violent and abusive to Shannon, and to other women. To the extent she engaged in criminal conduct, Shannon did because she is a battered woman, physically and psychologically.

It is for this reason that she should be acquitted. She acted only under compulsion or duress. She admits the acts, but in the context of her own situation as a battered woman should not be punished for them.

Respectfully submitted this 18th day of August, 2006.

> s/D. Scott Dattan
> Attorney for Defendant, Shannon Rainey
> 2600 Denali Street, Suite 460
> Anchorage, Alaska  99503
> Phone:  907-276-8008
> E-Mail:  dattan@alaska.net
> Alaska Bar No:  8411111

**CERTIFICATE OF SERVICE**

I hereby certify that on August 18, 2006, a copy of foregoing was served electronically on: Stephan Collins, Mike Dieni, Allan Beiswenger, William Carey, John C. Pharr, Scott Sterling, Lance Wells, T. Burke Wonnell, Mark Rosenbaum, Raul Martinez, and Hugh Fleischer.

s/D.Scott Dattan